UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

CIVIL ACTION

NO. 05-4182

PERTAINS TO: INSURANCE
        Master Consolidated Class Action
        Complaint (Rec. Doc. 3413)

SECTION "K"(2)

ORDER AND REASONS

Before the Court is Defendant Insurers' Motion to Strike Class Allegations (Rec. Doc.

16711) ("Mot."). The Plaintiffs have filed an opposition (Rec. Doc. 17332) ("Opp."), to which

Defendants have filed a reply (Rec. Doc. 17666) ("Reply"). Having reviewed the relevant

pleadings, the briefings, and the law pertinent to this matter, the Court finds that this motion

should be granted.

I. FACTUAL BACKGROUND

The present matter concerns the Insurance portion of the *In re Katrina Canal Breaches*

*Consolidated Litigation*, Civ. A. No. 05-4182. Plaintiffs are insurance customers of the

Defendant insurance companies who held policies in effect when Hurricane Katrina struck

Louisiana on August 29, 2005. Plaintiffs' Insurance Master Consolidated Class Action

Complaint ("Compl.") (Rec. Doc. 3413) generally alleges that the Defendants each denied

coverage to policyholders in a way that was contrary to the terms of the policy and was done in

bad faith. Plaintiffs seek a declaratory judgment establishing that the flood exclusion in their

policies did not apply to the inundation by levee breach that occurred during Hurricane Katrina,

1



EXHIBIT

A

as well as a declaratory judgment decreeing that the "anti-concurrent" policy provisions are inapplicable where a covered peril (the flood) is the efficient proximate cause of the loss. Compl. ¶¶ 65a-65g, 131, 167a-167g. They further seek damages for the following claims: breach of contract, breach of the implied covenant of good faith and fair dealing, violation of Louisiana laws prohibiting bad faith by insurers, and breach of fiduciary duty. Compl. ¶¶ 75, 82, 92, 100, 173, 186, 199. Plaintiffs propose three classes of plaintiffs corresponding to the three types of insurance policies: homeowners' insurance, commercial insurance, and renter's insurance. Compl. ¶ 9. Plaintiffs have suggested further subdividing the homeowner's class into 63 separate subclasses corresponding to one class per insurer. Compl. ¶ 10.

In their motion, Defendants assert first that the case should be dismissed because the Louisiana Supreme Court has held that the inundation during Hurricane Katrina due to levee breach is within the definition of a "flood." Accordingly, the flood exclusions within each Plaintiff's policy excludes from policy coverage any damage due to levee breach. Mot. at 10. Similarly, no recovery should be permitted for breach of contract claims based upon Louisiana Valued Policy Law ("VPL") because the Plaintiffs do not allege that they suffered "a total loss from a covered peril." Mot. at 11. Any remaining claims, such as breach of contract or bad faith, are rife with individual issues and should be dismissed from the class complaint. Mot. at 11-14. Plaintiffs oppose any dismissal of class claims based on lack of commonality because similar state court claims have been permitted to proceed. Opp. at 2. If such dismissal were granted, however, Plaintiffs argue that this Court should require Defendants to notify their respective policyholders of the dismissal and their individual right to file their own cause of action. Opp. at 8.

## II. ANALYSIS

Having reviewed the briefs, this Court finds it most efficient to address first the Defendants' arguments that certain claims must be dismissed outright as contrary to settled law. Secondarily, this Court will consider whether any remaining claims should be dismissed for failure to comply with Rule 23's requirements for class actions.

### A. Claims Regarding Flood Exclusions & Louisiana's Valued Policy Law ("VPL")

Defendants assert that two claims should be stricken as contrary to settled law in Louisiana: the claim for declaratory relief regarding flood exclusions, and breach of contract claims under Louisiana's VPL. The Court will address each point of objection.

As to Defendants' first point, Louisiana law appears settled that levee breaches are included as "flood" under flood exclusions. This Court had previously held in the course of this litigation that the flood exclusions contained within many insurance policies in Louisiana were vague, and therefore the terms should be construed against the drafter, the Defendant insurance companies. *In re Katrina Canal Breaches Consol. Litig.*, 466 F. Supp. 2d 729, 757 (E.D. La. 2006). This interpretation would permit Plaintiffs to continue with their claims under flood exclusion policies. However, since this Court's decision, the Louisiana Supreme Court issued the definitive ruling on this issue of state law, finding that the flood exclusion terms were not vague, and therefore policies including a flood exclusion barred any recovery from a levee breach. *Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 194-195 (La. 2008). This Court has subsequently followed this authoritative ruling. *See In re Katrina Canal Breaches Consol. Litig.*, Civ. A. No. 05-4182, 2008 WL 4401761 (E.D. La. Sept. 22, 2008). Plaintiffs do not

oppose dismissal on this specific ground.  Accordingly, Defendants' motion will be granted

regarding Plaintiffs' claims for declaratory relief regarding the flood exclusion terms within the

insurance policies.[1]

Second, Defendants assert that any recovery for breach of contract under Louisiana's

VPL is inappropriate in this case.  "Valued Policy Laws were enacted in many states in the late

1800's and early 1900's 'in response to the perception that insurers were profiting by selling

insurance policies with inflated face values, and then, after the building suffered a total loss,

litigating the actual value of the insured structure, even though the insured had been charged

premiums for the policy limits . . . .'" *Landry v. Louisiana Citizens Property Insurance Co.*, 983

So.2d 66, 76 (La. 2008) (citation omitted).  Louisiana's VPL states as follows:

> A.   Under any fire insurance policy insuring inanimate, immovable property in
> this state, if the insurer places a valuation upon the covered property and uses
> such valuation for purposes of determining the premium charge to be made under
> the policy, in the case of total loss the insurer shall compute and indemnify or
> compensate any covered loss of, or damage to, such property which occurs during
> the term of the policy at such valuation without deduction or offset, unless a
> different method is to be used in the computation of loss, in which latter case, the
> policy, and any application therefor, shall set forth in type of equal size, the actual
> method of such loss computation by the insurer. Coverage may be voided under
> said contract in the event of criminal fault on the part of the insured or the assigns
> of the insured.
>
> B.   Any clause, condition, or provision of a policy of fire insurance contrary to
> the provisions of this Section shall be null and void, and have no legal effect.
> Nothing contained herein shall be construed to prevent any insurer from
> cancelling or reducing, as provided by law, the insurance on any property prior to
> damage or destruction.
>
> C.   The liability of the insurer of a policy of fire insurance, in the event of total or

---

[1]Those sections of the Complaint dismissed pursuant to this holding include Homeowners
Policyholder Count I (¶¶ 65a-65g), Renters' Class Members Claim (¶ 131), and Commercial
Class Count I (¶¶ 167a-167g).

partial loss, shall not exceed the insurable interest of the insured in the property unless otherwise provided for by law. Nothing in this Section shall be construed as to preclude the insurer from questioning or contesting the insurable interest of the insured.

D.   This Section shall only apply to policies issued or renewed after January 1, 1992, and shall not apply to a loss covered by a blanket-form policy of insurance nor to a loss covered by a builders risk policy of insurance.

La. Rev. Stat. § 22:1318.

This Court has previously considered the applicability of the VPL to flood claims.  In addressing a motion to dismiss in the "Road Home" portion of this litigation, this Court held that the VPL could only apply to claims arising out of fire insurance policies.  *In re Katrina Canal Breaches Consol. Litig.*, 601 F. Supp. 2d 809, 825-26 (E.D. La. Mar. 5, 2009).  That decision followed the conclusion of the Louisiana Supreme Court in *Landry v. Louisiana Citizens Property Insurance Co.*, 983 So.2d 66, 76 (La. 2008).  Here, Plaintiffs have filed claims under their homeowners' policies, renter's policies, and/or commercial policies.  No claim is premised upon a fire insurance policy.  Because the VPL only applies to fire insurance policies, Plaintiffs' claims for breach of contract, Homeowners Policyholder Count II (Compl. ¶ 75), shall be dismissed.


**B.  Remaining Class Claims**

Plaintiffs' remaining claims include various allegations of breach of contract, breach of the implied covenant of good faith and fair dealing, violation of Louisiana laws prohibiting bad faith by insurers, and breach of fiduciary duty.  Defendants move to strike these class claims on the grounds that individual issues predominate over those common to the class.

Class certification is guided by Rule 23 of the Federal Rules of Civil Procedure.  "To

5

obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007). Rule 23(a) permits a class to be certified if (1) "the class is so numerous that joinder of all members is impracticable," (2) "there are questions of law or fact common to the class," (3) the claims or defenses that will be presented by the class representatives are "typical of the claims or defenses of the class," and (4) the class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Again, Rule 23(a) must be satisfied by all proposed class actions.

In addition to fulfilling the requirements of Rule 23(a), a class action must also satisfy the prerequisites of Rule 23(b)(1), (b)(2), or (b)(3). There appears no dispute here that the proposed class action falls within Rule 23(b)(3) because the causes of action for declaratory relief have been dismissed,[2] and therefore "monetary relief is the predominant form of relief sought and the monetary interests of class members require enhanced procedural safeguards." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998). Rule 23(b)(3) requires that the court find that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These findings are often referred to as the "predominance" and "superiority" requirements. *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007). Rule 23(b)(3) sets forth findings that are relevant to the predominance and superiority requirements:

---

[2]*See, e.g.,* Compl. ¶¶ 65a-65g, in which Plaintiffs seek a declaratory judgment that the flood exclusion terms do not apply to levee breach. Part II-A, *supra*, dismisses this claim.

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Federal courts "emphasize that it is the party seeking certification that bears the burden of establishing that the requirements of Rule 23 have been met." *Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318, 325 (5th Cir. 2008) (citation omitted). It is within the district court's discretionary decision to certify a class, a decision that is reviewed only for abuse of that discretion. *Anderson v. U.S. Dep't of Housing & Urban Devel.*, 554 F.3d 525, 528 (5th Cir. 2008). Nonetheless, "[t]he district court must conduct a 'rigorous analysis of the Rule 23 prerequisites' before certifying a class." *O'Sullivan v. Countrywide Home Loans*, 319 F.3d 732, 738 (5th Cir. 2003) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)). "A district court certainly may look past the pleadings to determine whether the requirements of rule 23 have been met." *Castano*, 84 F.3d at 744. "Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Id.*, *citing* Manual for Complex Litigation § 30.11 (3d ed. 1995); *accord Bell v. Ascendant Solutions, Inc.*, 422 F.3d 307, 312 (5th Cir. 2005) (district court must "focus on the requirements of [Rule 23], and if findings made in connection with those requirements overlap findings that will have to be made on the merits, such overlap is only coincidental.").

7

Defendants assert primarily that Plaintiffs cannot fulfill the predominance requirement of Rule 23(b)(3). They point out that numerous judges of this District and the Western District of Louisiana have dismissed similar class actions brought against insurers for allegedly failing to properly adjust insurance claims. Defendants claim that these dismissals were significantly based upon the finding that individual issues would predominate over any issues common to the class. Mot. at 2. Plaintiffs reply that similar class actions have been approved by Louisiana state courts. Opp. at 2. Because Louisiana's class certification statute is a "mirror" of Rule 23, Plaintiffs assert that this Court should follow Louisiana jurisprudence that permits class actions in circumstances such as these. Opp. at 3-7.

As a preliminary matter, this Court must follow federal law in certification. Plaintiffs cite two Louisiana state cases that certified similar classes: *Oubre v. Louisiana Citizens Fair Plan*, 961 So.2d 504 (La. Ct. App. 5th Cir. 2007), and *Orrill v. AIG, Inc.*, No. 05-11720 (Civ. Dist. Ct. Orleans Oct. 8, 2008) (Opp., Ex. B). Regardless of how similar Louisiana's class certification statute (La. Code Civ. Proc. art. 591) is with Federal Rule of Civil Procedure 23, this Court is bound to follow the federal procedural rule when sitting in diversity under the Class Action Fairness Act ("CAFA"). *See Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.") (citing *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 426-27, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996)); *Braud v. Transp. Serv. Co. of Ill.*, 445 F.3d 801, 803 (5th Cir. 2006) ("CAFA broadens diversity jurisdiction for certain qualifying class actions and authorizes their removal"). Indeed, were this Court to follow state procedural law in certifying a class, it would defeat the purpose of CAFA to limit the number of interstate class actions that

would have been otherwise certified under more liberal state procedural standards.[3]

Accordingly, this Court will rely upon Rule 23 and the federal jurisprudence that has interpreted the rule.

In focusing on the predominance requirement of Rule 23(b)(3), it must be stressed that "[t]he predominance requirement of Rule 23(b)(3), though redolent of the commonality requirement of Rule 23(a), is 'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Gene & Gene*, 541 F.3d at 326, *quoting Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 623-24, 117 S.Ct. 2231, 138

---

[3]The Senate Judiciary Committee reported CAFA as follows:

By now, there should be little debate about the numerous problems with our current class action system. A mounting stack of evidence reviewed by the Committee demonstrates that abuses are undermining the rights of both plaintiffs and defendants. One key reason for these problems is that most class actions are currently adjudicated in state courts, where the governing rules are applied inconsistently (frequently in a manner that contravenes basic fairness and due process considerations) and where there is often inadequate supervision over litigation procedures and proposed settlements. The problem of inconsistent and inadequate judicial involvement is exacerbated in class actions because the lawyers who bring the lawsuits effectively control the litigation; their clients-the injured class members-typically are not consulted about what they wish to achieve in the litigation and how they wish it to proceed. In short, the clients are marginally relevant at best. . . .

To make matters worse, current law enables lawyers to "game" the procedural rules and keep nationwide or multi-state class actions in state courts whose judges have reputations for readily certifying classes and approving settlements without regard to class member interests.

S. Rep. No. 109-14, at 4 (2005); *see also* Edward A. Purcell, Jr., *The Class Action Fairness Act in Perspective: The Old and the New in Federal Jurisdictional Reform*, 156 U. Pa. L. Rev. 1823, 1864 (2008) ("The conviction that animated most of CAFA's supporters was that the federal courts were much less likely to certify suits as class actions than were state courts and that denials of certification would, one way or another, quickly and abruptly end many, if not most, of them.")

9

L.Ed.2d 689 (1997). "Whether common issues predominate and whether the class action is a superior method to resolve the controversy requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case." *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006) (citation omitted). Courts must "consider how a trial on the merits would be conducted if a class were certified." *Maldonado*, 493 F.3d at 525 (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003)). This inquiry "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Bell Atl.*, 339 F.3d at 302.

In addressing the substances of the remaining class claims, this Court finds that they are not suitable for class certification. Plaintiffs have alleged claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of Louisiana laws prohibiting bad faith by insurers, and breach of fiduciary duty. These claims inherently require individualized fact-specific inquiries because they depend upon whether the Defendants failed to properly adjust and pay for Hurricane Katrina-related property claims. As persuasively argued by Defendants, this Court would have to delve into individualized inquiries regarding the nature and extent of a property owner's damage, the source of damage (*i.e.*, wind versus flood), the timing and adjustment of claims, the market conditions when that claim was adjusted, whether each class member complied with his post-loss duties, how much each class member was paid and for what damage that payment was made, and whether any supplemental payments were timely and sufficient to satisfy the claim. Mot. at 6-7.

10

A significant issue in all of these claims will include the reasonableness of the Defendants' conduct. The Fifth Circuit has generally held that if a court must evaluate the reasonableness of a defendant's conduct towards individual plaintiffs, such issues predominate over issues that are common to the class. In *Maldonado v. Ochsner Clinic Foundation*, 493 F.3d 521 (5th Cir. 2007), the court denied certification to a class of uninsured patients alleging that they were overcharged for treatment received from the defendant hospital. It dismissed the proposed class on the basis of predominance and explained, "The amount patients were charged and the amount that is 'reasonable' for the services they received is necessarily an individual inquiry that will depend on the specific circumstances of each class member, the time frame in which care was provided, and both Ochsner's and other hospitals' costs at that time." *Id.* at 523. The Fifth Circuit likewise denied certification to a class of consumers alleging that their mortgage broker required them to pay preparation fees to law firms, which would then pay kickbacks to the broker. *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 742 (5th Cir. 2003). The putative class alleged that the mortgage broker's alleged practices violated the federal Real Estate Settlement Procedures Act ("RESPA"), a statute that "seeks to ensure that real estate consumers 'are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices.'" *Id.* at 738 (quoting 12 U.S.C. § 2601(a)). In rejecting the proposed class on predominance grounds, the court reasoned:

> The only way the overall practice may be proven to violate RESPA, consistently with the [Department of Housing and Urban Development] liability standard, is to examine the reasonableness of payments for goods and services. This inquiry must be performed on a transaction-by-transaction basis, because a single finding of liability based on an unreasonable relationship between goods and services

does not necessitate the conclusion that such unreasonableness exists on a classwide basis.

*Id.* at 742.

In the present case, the need to assess the reasonableness of each Defendants' conduct pervades this proposed class. Plaintiffs' claim for bad faith under La. Rev. Stat. § 22:658, now codified at § 22:1892, "requires a showing that (1) an insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *Louisiana Bag Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1112-13 (La. 2008). The Louisiana Supreme Court explained in *Louisiana Bag* that "penalties [under § 22:1892] should be imposed only when the facts 'negate probable cause for nonpayment.'" *Id.* at 1114 (quoting *Guillory v. Travelers Ins. Co.*, 294 So.2d 215, 217 (La. 1974)). In assessing this probable cause, a court must assess the insurer's conduct, which "depends on the facts known to the insurer at the time of its action, and this court has declined to assess penalties 'when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense.'" *Id.* (quoting *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1021 (La. 2003)). Accordingly, this Court would be required to analyze the reasonableness of any insurer's denial of coverage in determining whether a claim for bad faith exists under § 22:1892. As to the claims of breach of fiduciary duty, Louisiana law states, "An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance." *City Blueprint & Supply Co., Inc. v. Boggio*, 3 So.3d 62, 65 (La. Ct. App. 4th Cir. 2008). To determine the reasonableness of each agent's diligence, this Court would have to analyze what type of

12

coverage each class member requested, what each agent advised, and that agent's efforts to

obtain the requested coverage.  Similarly individualized inquiries would be needed for alleged

violations of the implied covenant of good faith and fair dealing,[4] as well as a statutory claim for

violation of good faith and fair dealing under La. Rev. Stat. § 22:1220 (now § 22:1973).[5]  The

Advisory Committee notes to Rule 23 suggest that a class could be certified if a defendant's

conduct was the same across the class.[6]  However, here we have multiple Defendants, each of

---

[4]*See Great Southwest Fire Ins. Co. v. CNA Ins. Cos.*, 547 So.2d 1339, 1342-43 (La. Ct. App. 3d Cir. 1989):

> It is only a primary insurer's bad faith that can create liability.  The imposition of liability upon the primary insurer for damages in excess of its primary policy limits is based upon the primary carrier's insurance policy provisions which reserve to the primary insurer full control of the litigation, including the defense and settlement negotiations.  The rationale has been that by reserving these rights to its exclusive control, the primary insurer must conduct itself *reasonably* and take only those actions which *a reasonable person* would take.  Courts have extended this reasoning by finding an implied covenant of good faith within every insurance policy and allowing recovery of compensatory damages where the insurer fails to observe the covenant of good faith.

*Id.* (emphasis added); *see also Thompson v. Shay*, 817 So.2d 1230, 1232-33 (La. Ct. App. 1st Cir. 2002) (citing *Great Southwest Fire*).

[5]La. Rev. Stat. § 22:1973(A):

> An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

[6]In the context of certifying a fraud class action under Rule 23(b)(3), the Advisory Committee states:

> The court is required to find, as a condition of holding that a class action may be maintained under this subdivision, that the questions common to the class predominate over the questions affecting individual members. It is only where

13

which was represented by various agents who performed the adjustments and negotiations. Thus, individualized analysis of each agent's actions will be needed, making class certification under Rule 23(b)(3) inappropriate.

This Court's conclusion is supported by judges of coordinate federal courts who have also found that similar class actions are not certifiable under Rule 23. Judge Vance of this Court considered a putative class action by customers of an insurance company alleging that it failed to include general contractor, overhead, and profit costs ("GCO & P") when adjusting customers' insurance claims for damage after Hurricane Katrina. *Nguyen v. St. Paul Travelers Ins. Co.*, Civ. A. No. 06-4130, 2008 WL 4534395, at *1-2 (E.D. La. Oct. 6, 2008). The customers alleged claims of breach of contract and bad faith; however, Judge Vance denied certification due to lack of predominance of common issues, reasoning that "[w]hether the nature of an insured's damages indicates that he or she is reasonably likely to require the services of a general contractor is a factual question, requiring individualized assessments." *Id.* at *9. Judge Trimble of the Western District of Louisiana dismissed a similar class action claim against an insurer for under-adjustment of insurance claims after Hurricane Katrina, finding that factual inquiries would need to be made into "each putative class member's claims, such as where and when materials and

---

this predominance exists that economies can be achieved by means of the class-action device. In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.

Fed. R. Civ. P. 23 advisory committee note.

14

supplies were being purchased, what was the market price at the time, and when did the price of materials and supplies decrease." *Jones v. Nat'l Sec. Fire & Cas. Co.*, Civ. A. No. 06-1407, 2006 WL 3228409, at *4 (W.D. La. Nov. 3, 2006), *aff'd* 501 F.3d 443 (5th Cir. 2007). Likewise, in *Aguilar v. Allstate Fire & Casualty Insurance Co.*, Judge Feldman of this Court denied a class action alleging underpayment of post-Katrina insurance claims due to the class representatives' failure to fulfill the predominance requirement:

> While Allstate's general internal policies for adjusting claims may arguably be one common issue of fact, demonstrating a wrongful pattern and practice of failing to adjust claims will require an intensive review of the individual facts of each class member's damage claim, including the nature and extent of damage, the timing and adjustment of each class member's claim, how much each class member was paid for his claim and for what damage, and whether that amount was sufficient and timely. On the face of the pleading, it is clear that those individualized and highly personal issues pertaining to each class member patently overwhelm any arguably common issues, rendering the claims inappropriate for class treatment.

*Aguilar v. Allstate Fire and Cas. Ins. Co.*, Civ. A. No. 06-4660, 2007 WL 734809, at *3 (E.D. La. Mar. 6, 2007); *see Terrebonne v. Allstate Ins. Co.*, 251 F.R.D. 208, 211-12 (E.D. La. 2007) (holding individual issues predominate in class action against insurers under Louisiana's Valued Policy Law); *Chetta v. State Farm & Cas. Co.*, Civ. A. No. 06-4662, 2007 WL 1233546, at *1 (E.D. La. Apr. 25, 2007) (Livaudais, J.); *Comer v. Nationwide Mut. Ins. Co.*, No. 1:05 CV 436 LTD RHW, 2006 WL 1066645, at *3 (S.D. Miss. Feb. 23, 2006); *see also Escoe v. State Farm Fire & Cas. Co.*, Civ. A. No. 07-1123, 2007 WL 2903048, at *3 (E.D. La. Sept. 27, 2007) (Berrigan, J.) (noting that "most glaring" flaw in proposed insurance class action "is that

individual issues predominate over class issues."). Accordingly, this Court will strike all remaining class allegations for failure to fulfill Rule 23(b)(3)'s predominance requirement.[7]

**C. Notice to Putative Class Members**

In their opposition, Plaintiffs requested that, should this Court strike their class claims, then this Court should "require the Insurance Company Defendants to notify their individual policyholders of the dismissal of the class allegations in the Master Consolidated Complaint and the existence of their individual rights which flow back to them as putative class members following the demise of the class allegations." Opp. at 8. Plaintiffs cite to recent case law reaffirming that any prescriptive period is interrupted by the filing of a class action, and recommences upon denial of class certification. The concern of Plaintiffs' counsel is entirely reasonable; the prescriptive period for individual's claims will cease tolling with this denial, and without clear notice, these individual claimants may lose their rights.

However, clearly established jurisprudence holds that there is no requirement to notify putative class members of the denial of class certification. In *Rineheart v. Ciba-Geigy Corp.*, 190 F.R.D. 197 (M.D. La. 1999), Judge Polozola performed a thorough analysis of Fifth Circuit precedent to conclude that "no notice of a dismissal or settlement to asserted class members is

---

[7]Because Plaintiffs cannot establish predominance, it is unnecessary to address the other Rule 23 requirements. *See Steering Committee*, 461 F.3d at 601 (declining to address other Rule 23 requirements where plaintiffs failed to fulfill predominance or superiority prerequisites); *Nguyen v. St. Paul Travelers Ins. Co.*, 2008 WL 4691685, at *3 (E.D. La. Oct. 22, 2008) (Vance, J.) ("Because the Court finds that plaintiff has not met his burden of showing that common questions predominate, which dooms class certification under Rule 23(b)(3), the Court does not address the other threshold requirements of Rule 23(a), or the superiority requirement of Rule 23(b)(3).").

required if there has been a judicial denial of class certification." *Id.* at 200, *citing Pearson v. Ecological Science Corp.*, 522 F.2d 171, 177 (5th Cir. 1975) ("Hence, where a court has ruled under Rule 23(c)(1) that an action cannot properly be maintained as a class action the notice requirements of Rule 23(e) do not apply, at least where the dismissal and settlement of the action do not directly affect adversely the rights of individuals not before the court."). This Court even specifically adopted the reasoning of *Rineheart* in denying a request for notice in a previous class action suit. *Street v. Diamond Offshore Drilling*, Civ. A. No. 00-1317, 2001 WL 883216, at *1 (E.D. La. July 30, 2001). Plaintiffs cannot point out any way that putative class members have relied on any action of this Court, such as an approval of certification, that would prompt the need for notice. *See Hervey v. City of Little Rock*, 787 F.2d 1223, 1230 (8th Cir. 1986) ("Finally, we note that notice of the decertification is required only to the extent necessary to reach those potential class members who received notice of certification and relied on being included in the class."). It should be noted that this ruling has no impact on the Insurance Plaintiffs Liaison Committee's ability to provide some public notice to putative plaintiffs that their claims may prescribe. This Court simply finds that it has no power to order the Defendants to provide such notice.

## III. CONCLUSION

For the foregoing reasons, accordingly,

**IT IS ORDERED** that Defendant Insurers' Motion to Strike Class Allegations (Rec. Doc. 16711) is **GRANTED**.  All class allegations in the Master Consolidated Class Action Complaint (Rec. Doc. 3413) are **STRICKEN.**  Those claims in the Master Consolidated Class Action Complaint based upon alleged misinterpretation of flood exclusion policies (Homeowners Policyholder Count I (¶¶ 65a-65g), Renters' Class Members Claim (¶ 131), and Commercial Class Count I (¶¶ 167a-167g)), and those claims based upon Louisiana Valued Policy Law (Homeowners Policyholder Count II (¶ 75)) are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this ___16th___ day of June, 2009.

STANWOOD R. DUVAL, JR.
**UNITED STATES DISTRICT JUDGE**

18

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

LANDRY ARCHITECTURE, LLC                    CIVIL ACTION

VERSUS                                      NO: 09-3974

VALLEY FORGE INSURANCE CO., ET AL.          SECTION: R(1)

### ORDER AND REASONS

Before the Court is defendant Valley Forge Insurance Co.'s motion to dismiss, (R. Doc. 4), and motion to file an amended affidavit, (R. Doc. 24). For the following reasons, the Court GRANTS Valley Forge's motion to dismiss and DENIES Valley Forge's motion to file an amended affidavit as moot.

## I.   BACKGROUND

This suit arises out of disputed insurance claims for commercial property damage, business income losses, and other expenses resulting from Hurricane Katrina. (R. Doc. 1). Plaintiff Landry Architecture, LLC purchased the insurance policy in issue, policy No B 2057694544, in August 2002 from defendant Valley Forge through the insurance broker Insurance Underwriters Ltd. (R. Doc. 1, Ex. D). Landry renewed the policy on an annual



basis thereafter. *Id.*

On May 29, 2009 Landry sued Valley Forge and Insurance Underwriters in state court alleging breach of contract and of the duty of good faith and fair dealings under La. R.S. 22:1973, La. R.S. 22:1892 and La. Civil Code art. 1997. (R. Doc. 1). On June 23, 2009 Valley Forge removed the case on the grounds that the parties were diverse under 28 U.S.C. § 1332, and Insurance Underwriters improperly joined. (R. Doc. 1).[1] Landry moved the Court to remand, and On August 25, 2009, the Court Denied Landry's motion and dismissed those claims against Insurance Underwriters, Ltd because no reasonable possibility of recovery against Insurance Underwriters existed. (R. Doc. 33). At the time of Landry's motion to remand, Valley Forge had also moved the Court to dismiss Landry's claims against it under Federal Rule of Civil Procedure 12(b)(6), arguing that the prescriptive period had run on Landry's insurance claims resulting from Hurricane Katrina. (R. Doc. 4). Because Landry had not filed any opposition to Valley Forge's motion at that time, the Court ordered Landry to do so. (R. Doc. 33). With the issues now fully briefed, the Court turns to Valley Forge's motion to dismiss.

---

[1] The parties did not dispute that the amount in controversy exceeded the jurisdictional limit of $75,000. (R. Doc. 9). The parties also did not dispute that complete diversity did not exist on the face of the complaint with both Valley Forge and Insurance Underwriters as defendants. *Id.*

2

## II.  Legal Standards

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1960 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. at 1949.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.*  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly,* 550 U.S. at 555.  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.

3

*Lormand*, 565 F.3d at 256.   If there are insufficient factual

allegations to raise a right to relief above the speculative

level, *Twombly*, 550 U.S. at 555, or if it is apparent from the

face of the complaint that there is an insuperable bar to relief,

*Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492

F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must be dismissed.


## III. DISCUSSION

Valley Forge asserts that Landry's claims are not timely

because Landry filed this suit after September 1, 2007, the

expiration of the prescriptive period for first-party insurance

claims resulting from Hurricane Katrina Damage.   (R. Doc. 4).

Landry's cause of action against Valley Forge stems from

allegations that Valley Forge did not adequately compensate

Landry under Landry's insurance policy.   (R. Doc. 9).   In

Louisiana, a one year prescriptive period traditionally applies

to filing first-party property insurance claims, such as that

present here.[2]   *See* La. R.S. 22:629.   After Hurricanes Katrina,

however, the Louisiana legislature extended this period to two

years in La. R.S. 22:1894.   *See State v. All Property and Cas.*

*Ins. Carriers Authorized and Licensed To Do Business In State*,

937 So.2d 313 (La. 2006)(holding that legislation extending the

---

[2] Prescription is the civil-law equivalent of a statute of
limitations.   Blacks Law Dictionary (8th ed.2004); *see also* La.
Civ. Code Ann. art. 3447 (West 2007).

prescription period from one year to two years for filing
first-party property insurance claims arising from Hurricanes
Katrina and Rita was constitutional). La. R.S. 22:1894 provides
that:

> Notwithstanding any other provision of this
> Title to the contrary, any person or entity
> having a claim for damages pursuant to a
> homeowners' insurance policy, personal
> property insurance policy, tenant homeowners'
> insurance policy, condominium owners'
> insurance policy, or commercial property
> insurance policy, and resulting from Hurricane
> Katrina shall have through September 1, 2007,
> within which to file a claim with their
> insurer for damages, unless a greater time
> period to file such claim is otherwise
> provided by law or by contract.

La. R.S. 22:1894.[3] Plaintiff's initial insurance policy was
issued in August 2002 and renewed thereafter on an annual basis.
(R. Doc. 1, Ex. D). In June 2004, Valley Forge issued a notice
that Landry's insurance policy would change and no longer cover
business income loss resulting from windstorm or hail. (R. Doc.
1, Lightfield affidavit, Brockhaus affidavit). Landry renewed
its policy in August 2004, and did so again in August 2005. The
policy in effect during Hurricane Katrina was delivered on or
about July 1, 2005, and went into effect on August 1, 2005,
almost four years before Landry filed suit. *Id.* Hurricane
Katrina struck New Orleans on August 29, 2005, at which point the

---

[3] La. R.S. 22:1894 was renumbered from La. R.S. 22:658.3 by
Acts 2008, No. 415, § 1, eff. Jan. 1, 2009.

5

prescriptive period for Landry's claim would undeniably begin to accrue. *See Ross v. Hanover Ins. Co.*, No. 09-3501, 2009 WL 2762713 at *2 (E.D.La. 2004)("The prescriptive period begins to run from the day injury or damage is sustained."). No subsequent statute has extended the prescriptive period enacted in La R.S. 22:1894, nor is a longer period contained in Landry's particular insurance policy. (R. Doc. 4, Ex. B, Hancock Affidavit)(noting that the policy provides that legal actions must be brought against Valley Forge "within 2 years after the date on which the physical loss or damage occurred."); (R. Doc. 1, Endorsement Form G-117884-A17). Landry's claims are therefore prescribed on the face of its complaint.

Landry argues that the relevant prescription period "has been interrupted by repeated acknowledgments by Valley Forge." (R. Doc. 17). Because Landry's claims are prescribed on the face of its complaint, Landry bears the burden of proving interruption or renunciation of the prescription period. *See Winford v. Conerly Corp*, 897 So.2d 560, 565 (La. 2005).

Landry first argues that Valley Forge's investigation, acceptance of claim support documentation, and negotiation of the loss before the running of the prescriptive period interrupted the prescriptive period. (R. Doc. 17). Landry's complaint establishes that (1) Landry sent loss documentation to Valley Forge, (2) Valley Forge adjusters evaluated the loss, (3) Valley

Forge adjusters negotiated the loss, and (4) that on February 11,

2009 Valley Forge paid Landry $32,741 for its loss.  (R. Doc. 1,

¶¶ 12-14).  Contrary to Landry's argument, however, Valley

Forge's investigation, adjustment, and negotiation of Landry's

claim does not toll the prescriptive period.  La. R.S. 22:879

states that

> None of the following acts by or on behalf of an insurer
> shall be deemed to constitute a waiver of any provision
> of a policy or of any defense of the insurer thereunder:
> (1) Acknowledgment of the receipt of notice of loss or
> claim under the policy.
> (2) Furnishing forms for reporting a loss or claim, for
> giving information relative thereto, or for making proof
> of loss, or receiving or acknowledging receipt of any
> such forms or proofs completed or incompleted.
> (3) Investigating any loss or claim under any policy or
> engaging in negotiations looking toward a possible
> settlement of any such loss or claim.

La. R.S. 22:879.[4]  Louisiana appellate courts have interpreted

this statutory language to include the defense of prescription,

absent actions by the insurer that would lead the plaintiff to

"reasonably believe the insurer would not require compliance with

the [prescriptive period]." *Blum v. Cherokee Ins. Co.*, 336 So.2d

894, 897 (La. Ct. App. 1976); *see also Stephens v. Audobon

Insurance Co.*, 665 So.2d 683, 685-86 (La. Ct. App. 1995).  While

Landry argues that Valley Forge never "contested liability" when

requesting documentation and information, (R. Doc. 17), such

actions are part of the adjustment process clearly contemplated

---

[4] Renumbered from R.S. 22:651 by Acts 2008, No. 415, § 1,
eff. Jan. 1, 2009.

under La. R.S. 22:879.  Landry does not argue or suggest that
Valley Forge ever mentioned waiving the prescriptive period for
this claim, or even mentioned prescription at all while
furnishing forms and requesting information.  The Court finds no
factual basis from which Landry might "reasonably believe" that
Valley Forge waived compliance with the relevant prescriptive
period.  Therefore, under La. R.S. 22:879, Valley Forge's
investigation, acceptance of claim support documentation, and
negotiation of the loss before the running of prescription, does
not interrupt the prescriptive period.

Landry next argues that Valley Forge's tender of $32,741 on
February 11, 2009 constitutes an acknowledgment that interrupts
prescriptive period.  As an initial matter, Valley Forge's
payment occurred after September 1, 2007 and thus could not
interrupt the prescriptive period *ex post facto*.  Even assuming,
*arguendo*, that Valley Forge issued the payment before the
prescriptive period expired, an insurer's tender of payment does
not interrupt or toll the prescriptive period.  *See Estate of
Degraauw v. Travelers Ins. Co.* 940 So.2d 858, 863-64 (La. Ct.
App. 2006)(stating that a tender of payment is insufficient to
show waiver of prescription because such an abandonment of rights
must be "clear, direct, and absolute and manifested by the words
or actions of the party in whose favor prescription has run.").
Moreover, a finding that Valley Forge's post-prescription payment

8

is sufficient to interrupt the prescriptive period *ex post*, would
undermine the policy in favor of insurer's paying undisputed
claims even if prescribed.  *See Blum*, 336 So.2d at 897 n.5 (We
would be disinclined to discourage an insurer, presented with a
claim after passage of the period for filing suit, from
considering part payment of the defensible claim . . .").  The
Court therefore finds that Valley Forge's February 11, 2009
payment does not constitute express waiver of the prescriptive
period for this claim or interrupt the running of the
prescriptive period *ex post facto*.

Lastly, Landry's claims under La. R.S. 22:1973, previously
La.Rev.Stat. 22:1220, La. R.S. 22:1892, and La. Civil Code art.
1997, for breach of the insurer's duty of good faith and fair
dealing are not premised upon any valid claim for breach of an
insurance contract.  In this case, Louisiana law requires that
those claims must likewise be dismissed.  *See Phillips v.
Patterson Ins. Co.*, 813 So.2d 1191, 1195 (La. Ct. App.
2002)(dismissing claim for bad faith penalties where "no viable
underlying claim" existed due to dismissal for prescription);
*Tatum v. Colonial Lloyds Ins. Co.*, 702 So.2d 1076, 1078 (La. Ct.
App. 1997) ("[W]e conclude that since [La.Rev.Stat. § 22:1973]
provides for damages and penalties within the Louisiana Insurance
Code, an underlying cause of action giving rise to the
possibility of such damages and penalties must be maintainable

9

under the law of this state to which that Code is applicable.");

*Clausen v. Fidelity & Deposit Co. of Md.*, 660 So.2d 83, 85-86

(La. Ct. App. 1995) ("Regarding recovery under [La.Rev.Stat. §§

22:1892 and 22:1973], we conclude that a plaintiff attempting to

base her theory of recovery against an insurer on these statutes

must first have a valid, underlying, substantive claim upon which

insurance coverage is based. The penalties authorized by these

statutes do not stand alone; they do not provide a cause of

action against an insurer absent a valid, underlying, insurance

claim.").

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Valley Forge's

motion to dismiss.  Given that this effectively dismisses

Landry's suit, the Court further DENIES Valley Forge's motion to

file an amended affidavit as moot.

New Orleans, Louisiana, this 23rd day of October, 2009.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

10